UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANK ANDREWS and <br> ROBIN ANDREWS, <br><br> Plaintiffs, <br><br> v. <br><br> TARGET PHARMACY #T-2292 <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> *   Civil Action No. 13-cv-12268-ADB <br> * <br> * <br> * <br> * |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

Plaintiffs Frank and Robin Andrews brought this civil action against Target Pharmacy #T-2292 ("Target" or "the pharmacy"), alleging that on September 9, 2009, the pharmacy staff negligently dispensed medication to Mr. Andrews and that this error caused harm to Mr. Andrews. Specifically, Plaintiffs claim that the pharmacy dispensed a dosage of a medication called "Prograf" that was ten times higher than the amount prescribed by Mr. Andrews' doctor. Plaintiffs allege that as a result of the pharmacy's negligence, Mr. Andrews ingested an overdose of Prograf, resulting in both physical and emotional injuries. Mr. Andrews asserts a negligence claim against the pharmacy and seeks monetary damages for his alleged injuries and resulting loss of wages. Plaintiff Robin Andrews, who is Mr. Andrews' wife, also asserts a claim for loss of consortium with her husband.

Before the Court is Target's Motion for Summary Judgment [ECF No. 211]. For the reasons set forth in this Order, the Motion is <u>ALLOWED</u>, and Judgment shall enter for the Defendant.

I.     **FACTUAL BACKGROUND**[1]

Prograf (tacrolimus) is a drug approved for use as prophylaxis against organ rejection in patients receiving liver, kidney, or heart transplants.[2] Mr. Andrews had been taking Prograf since March 2006, after he received a liver transplant. See SMF ¶¶ 16, 22.

Plaintiffs' two-page Complaint alleges that at the time of the incident in 2009, Mr. Andrews had a doctor's prescription for Prograf in a dosage equal to 0.5mg (five tenths of a milligram). See Complaint [ECF No. 5] ("Compl."), ¶ 5. On or about September 9, 2009, Mr. Andrews filled this prescription at Target Pharmacy in Wareham, Massachusetts. Id. ¶ 4. Instead of dispensing 0.5 mg Prograf capsules, however, the pharmacy staff mistakenly dispensed capsules containing 5.0mg (five milligrams) of Prograf, or ten times the amount of Mr. Andrews' prescription dosage. Id. ¶ 6. Mr. Andrews alleges that his resulting overdose was caused by the pharmacy staff's negligence. Id. ¶¶ 6, 8.

Plaintiffs further allege that the overdose caused Mr. Andrews to suffer physical and mental injuries. Specifically, Mr. Andrews says that he suffered from kidney failure. SMF, ¶ 10. He also claims to suffer from persistent and/or permanent conditions of the brain; senile degeneration of the brain; nervous system, neurological and cognitive disorders including, but not limited to, encephalopathy; depressive disorder; mood disorder; problems with attention and memory; confusion; agitation; irritability; tangential thinking; slowed speech and writing; greater apathy; decreased spontaneity; trouble concentrating; and issues with his gait. SMF, ¶ 9.

---

[1] In accordance with Local Rule 56.1, Target has submitted a concise statement of undisputed material facts ("SMF") in support of its Motion for Summary Judgment. [ECF No. 212]. Because Plaintiffs have not disputed any of these facts in accordance with the procedures set forth in Local Rule 56.1, those facts are deemed admitted for purposes of this Motion.

[2] The Court takes judicial notice of the indications for use contained in Prograf's FDA-approved labeling, which is available on the FDA's website: http://www.accessdata.fda.gov/scripts/cder/drugsatfda/index.cfm (last visited August 3, 2016).

The record, however, reflects that Mr. Andrews had a fairly complicated medical history, even prior to the overdose. In the five years immediately preceding the incident, Mr. Andrews was treated for cirrhosis of the liver; diabetes; hypertension; and Hepatitis C. See SMF, ¶ 21. Plaintiffs also conceded that these conditions caused Mr. Andrews to suffer from numerous complications, both physical and mental. Plaintiffs disclosed that in 2008, Mr. Andrews was treated for a "mental disturbance" allegedly caused by an Interferon drug. Id.; see also Affidavit of Meredith M. Lasna, Esq. [ECF No. 212-1] ("Lasna Aff."), Ex. 4, p. 4.

Plaintiffs further allege that as a result of the Prograf overdose, Mr. Andrews has been out of work since September 9, 2009. SMF, ¶ 18; see Compl. ¶ 9. Plaintiffs' deposition testimony, however, suggests that Mr. Andrews ceased working in 2007 or 2008, well before the overdose occurred. SMF, ¶ 25; see also Lasna Aff., Ex. 1, pp. 51-54. In fact, Mrs. Andrews testified that her husband stopped working as a result of side effects from Interferon. Id. Plaintiffs have not disputed this fact for purposes of summary judgment.

Finally, Mrs. Andrews claims that she has suffered from loss of consortium with her husband due to Target's negligence. Mrs. Andrews also demand damages for her alleged loss of wages, based on the fact that because she needs to care for Mr. Andrews, she is no longer able to work outside the home.

## II.   PROCEDURAL BACKGROUND

Because Target's Motion for Summary Judgment is closely tied to the procedural history of this case, the Court briefly reviews the relevant events:

This action was removed to federal District Court in September 2013. In June 2014, Judge O'Toole entered a Scheduling Order that provided for a fact discovery deadline of

February 2015. [ECF No. 36]. The Scheduling Order did not, however, establish deadlines for expert discovery.

In September 2014, Plaintiffs moved to extend the fact discovery deadlines by 60 days, citing Mr. Andrew's health problems. [ECF No. 40]. Judge O'Toole allowed the motion. In December 2014, the parties jointly moved for a second extension of those deadlines [ECF No. 44], which the Court also allowed. Under the revised deadlines, written fact discovery was to be completed by April 1, 2015, and fact witness depositions were to be complete by June 27, 2015. [ECF No. 45].

The case was subsequently reassigned to this session. At a Status Conference on June 1, 2015, the Court (1) set a trial date of December 7, 2015; and (2) established additional scheduling and pre-trial deadlines. The Court's Scheduling Order stated that "Plaintiffs' experts shall be designated and the information required by FRCP 26(a)(2) shall be disclosed by July 1, 2015." [ECF No. 51]. All expert depositions were to be completed by September 30, 2015. The Court also entered an order setting pretrial deadlines. [ECF No. 50].

In October 2015 (after all fact and expert discovery had presumably closed), Target filed several motions in limine, including a motion to preclude Plaintiffs from offering expert testimony [ECF No. 60]. Target explained that while Plaintiffs' initial disclosures and interrogatory responses had identified several treating physicians as potential expert witnesses, Plaintiffs never provided Target with any formal expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2). Further, Plaintiffs had not provided any information about the subject matter of the potential expert witnesses' expected testimony. See Fed. R. Civ. P. 26(a)(2)(C).

The Court held a pretrial conference on November 19, 2015 (one month prior to the first trial date), at which it considered these and other issues. After hearing from the parties, the Court

4

determined that the case was not trial ready. In addition, and notwithstanding Plaintiffs' failure to comply with the scheduling deadlines, the Court granted Plaintiffs a substantial extension of time to comply with their expert disclosure obligations and prepare for trial.  The Court ordered Plaintiffs to "comply with all of their disclosure obligations under Fed. R. Civ. P. 26" no later than December 21, 2015. [ECF No. 82]. In addition, the Court ordered that any additional depositions be completed no later than January 22, 2016, and instructed the parties to notify the Court if additional time was needed. Id.

On December 20, 2015, counsel for Plaintiffs filed a document titled "Designation of Experts" [ECF No. 142], which included only a curriculum vitae for Dr. Steven Gabardi. Dr. Gabardi was not one of Plaintiff's treating physicians, and no expert report was provided.

On December 22, 2015, Target filed an "Update" with the Court, explaining that while Plaintiffs had confirmed that Dr. Gabardi would testify at trial as an expert on the "potential side effects" of Prograf, Plaintiffs had still not provided an expert report for Dr. Gabardi in accordance with Fed. R. Civ. P. 26(a)(2)(B). [ECF No. 145]. Target also renewed its motion to preclude Plaintiffs from offering expert opinions at trial. Id.

On December 24, 2015, the Court entered an Order [ECF No. 147] that provided in relevant part:

> "It is further ORDERED that at trial, Plaintiffs will be precluded from offering expert opinion testimony from any expert not identified by 12/21/2015. If Plaintiffs intend on calling Dr. Steven Gabardi as an expert, Plaintiffs are ordered to comply with all of their expert disclosure obligations under Fed. R. Civ. P. 26(a)(2) no later than 1/4/2016. Otherwise, Plaintiffs may be precluded from offering Dr. Gabardi's expert opinion testimony at trial.

Plaintiffs, however, did not comply with the Court's express order, and on January 7, 2016, Target moved for sanctions, noting that it had yet to receive an expert report for Dr. Gabardi. [ECF No. 156]. Target further explained that while Plaintiffs had made vague

references to various treating physicians who might testify as experts, they had not properly disclosed these individuals as experts or provided the basic information required by Rule 26(a)(2)(C). [ECF No. 157].

The parties appeared before the Court once again on January 28, 2016. In no uncertain terms, the Court ordered Plaintiffs to disclose Dr. Gabardi's expert report within two weeks. [ECF No. 163]. This time, Plaintiffs complied, and they provided Dr. Gabardi's expert report on February 8, 2016. [ECF No. 168]. They did not, however, disclose any further expert opinion testimony under Fed. R. Civ. P. 26(a)(2).

On March 10, 2016, the Court ruled on Target's still-pending motions in limine [ECF No. 175]. The Order allowed in part Target's Motion in Limine to Preclude Plaintiffs From Offering Expert Opinions [ECF No. 59]; Target's Motion in Limine to Preclude Plaintiffs from Offering the Testimony of Expert Witnesses Not Fully Identified in an Initial Disclosure or in Discovery [ECF No. 60]; and Target's Renewed Motion in Limine to Preclude Plaintiffs from Offering Expert Opinion [ECF No. 145]. In its Order, the Court noted that although it had provided Plaintiffs with "numerous opportunities to disclose their expert witnesses in accordance with Fed. R. Civ. P. 26(a)(2)," the only expert witness that Plaintiffs had properly disclosed to date was Dr. Steven Gabardi. Accordingly, the Court held that:

> Plaintiffs will be precluded from offering expert testimony at trial, with the exception of Dr. Gabardi. Further, Plaintiffs themselves will not be permitted to offer expert opinions at trial, and they may testify only as to their own observations and facts within their knowledge as laypeople. Additionally, although the Court will permit Plaintiffs' treating physicians to testify about their personal observations and any medical treatment that they may have prescribed or provided, they will not be permitted to offer expert opinions.

The Court also set deadlines for Target to disclose any rebuttal experts, and for those rebuttal experts to be deposed. [ECF No. 176]. The parties were directed to report for a further Status

Conference in May 2016, at which time the Court expected "all remaining expert discovery and depositions to be complete and [the] case to be ready for trial." Id.

In early April 2016, Plaintiffs attempted to notice the depositions of two additional physicians who had treated Mr. Andrews. Target moved to quash the deposition subpoenas [ECF No. 177], and the Court allowed the motion, observing that "[t]he fact discovery deadline and Plaintiffs' expert discovery deadline in this case both passed several months ago." [ECF No. 189]. The Court also explained that by setting deadlines for Target's rebuttal experts, the Court was not inviting Plaintiffs to re-open fact or expert discovery. The Court held that Plaintiffs' attempt to depose the treating physicians as fact witnesses was untimely, and further, that because neither doctor had been properly disclosed as an expert witness, it was unnecessary to conduct expert depositions.

On May 9, 2016, the Court set a new trial date of September 26, 2016. [ECF No. 206]. The same day, Target filed additional motions in limine, including a "Motion in Limine to Preclude Plaintiffs from Claiming Plaintiff's Alleged Kidney Failure" [ECF No. 202] and a "Motion in Limine to Preclude Plaintiffs from Claiming Permanent Neurocognitive Damages" [ECF No. 204]. Although labeled as motions in limine, Target's motions did not seek the exclusion of any particular evidence at trial. Instead, Target argued that Plaintiffs would not be able to prove their negligence and loss-of-consortium claims because they lacked any evidence to support the element of specific causation – *i.e.*, that the alleged overdose of Prograf was the proximate cause of the Plaintiffs' alleged injuries. Notably, while Dr. Gabardi's expert report contained some expert opinion testimony regarding Prograf's potential side effects, he did not offer any opinions as to what caused Mr. Andrews' alleged injuries, and in fact, his report specifically stated that he was *not* providing an opinion on causation. Aside from Dr. Gabardi,

7

Plaintiffs had no other expert opinion evidence to present at trial, given their failure to disclose any other expert witness.

In an Order dated June 7, 2016, the Court denied Target's motions, observing that while Target's arguments were potentially meritorious, a motion in limine was not an appropriate means of raising these issues, which would be better resolved through either a motion for summary judgment under Fed. R. Civ. P. 56, or a motion for judgment as a matter of law under Fed. R. Civ. P. 50. [ECF No. 210]. The Court further ordered that if Target wanted a pre-trial ruling on the specific causation issue, it should file a motion for summary judgment no later than June 30, 2016, so that the Court would have sufficient time to rule on the motion prior to the September trial date.

Accordingly, Target filed its Motion for Summary Judgment on June 30, 2016. [ECF No. 211], along with a Memorandum of Law [ECF No. 212]. Target argues, *inter alia*, that it is entitled to judgment as a matter of law because Plaintiffs cannot establish the element of causation without expert opinion evidence that the Prograf overdose caused Mr. Andrews' personal injuries.

Also on June 30, 2016, Plaintiffs filed a Motion for Leave to Re-Open Discovery [ECF No. 213]. In an attached affidavit, Plaintiffs' counsel acknowledges that discovery in this case had closed, but represents that due to his "attending personal matters effecting his ability to practice," Plaintiffs' experts on causation were not deposed. [ECF No. 213-1]. Specifically, Plaintiffs' counsel represents that he was hospitalized between December 7, 2014 and March 2015, which prevented him from retaining an expert on the issue of causation. Thus, Plaintiffs request that the Court re-open discovery so that they may disclose and depose additional medical experts.

Plaintiffs have also filed an Opposition to Target's Motion for Summary Judgment, which essentially argues that the Motion should be denied because there is still sufficient time to re-open expert discovery before trial. In addition, Plaintiffs attached a number of documents that they claim establish specific causation. [ECF No. 219].

## III. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if it may reasonably be resolved in favor of either party." Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (internal quotations, alteration, and citation omitted). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted).

By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. One Parcel of Real Prop. (Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). "To succeed in showing that there is no genuine dispute of material fact," the moving party must "'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4-5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).

Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002) (internal quotations and citation omitted). That is, the non-moving party must set forth "definite, competent evidence" showing that there is a genuine disagreement as to some material fact. One Parcel of Real Prop., 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 396-97 (1st Cir. 2012), and the court may discount "'conclusory allegations, improbable inferences, and unsupported speculation.'" Cochran, 328 F.3d at 6 (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

**B.  Analysis**

Target argues that Plaintiffs lack sufficient evidence to prove that the Prograf overdose proximately caused any of their alleged injuries. Specifically, Target points to the absence of any expert opinion evidence that could establish the requisite causal link, and it contends that the absence of such evidence is fatal to all of Plaintiffs' claims.

Target is correct. "In order to prevail in a pharmaceutical personal injury case, a plaintiff must establish two types of causation: general and specific." In re Neurontin Mktg., Sales

Practices, & Products Liab. Litig., 612 F. Supp. 2d 116, 123 (D. Mass. 2009). "'General causation is established by demonstrating, often through a review of scientific and medical literature, that exposure to a substance can cause a particular disease . . . . Specific, or individual, causation, however, is established by demonstrating that a given exposure is the cause of an individual's disease . . . .'" Id. (omissions in original) (quoting Mare Sue Henifin et al., Reference Guide on Medical Testimony, in Reference Manual on Scientific Evidence 439, 444 (Fed. Judicial Ctr. 2d ed. 2000)).

"Generally, a plaintiff in a medical malpractice action may carry his or her burden of proof on the issue[] of . . . causation only with the assistance of expert testimony." Mitchell v. United States, 141 F.3d 8, 13 (1st Cir. 1998); see also Held v. Bail, 28 Mass. App. Ct. 919, 920 (1989) (holding that the jury "may not speculate about the possible results of administering or withholding particular therapy," and that "if the causation question involves questions of medical science or technology, the jury requires the assistance of expert testimony"); Milward v. Rust-Oleum Corp., 820 F.3d 469, 476 (1st Cir. 2016).

This case is no exception. The average juror is not equipped to understand how a particular dosage of Prograf may affect the human body, and Plaintiffs would be required to present expert testimony explaining those effects and establishing a causal link between the Prograf overdose and the injuries Mr. Andrews allegedly suffered. Further, expert testimony is particularly important in this case, where Target strongly disputes causation, and contends that many of Mr. Andrews' health conditions either preexisted his Prograf overdose, or were caused by other factors.

Despite this need for expert opinion testimony, Plaintiffs have failed to produce any admissible expert testimony on the issue of specific causation. In fact, aside from Dr. Gabardi,

Plaintiffs failed to disclose any experts in accordance with Fed. R. Civ. P. 26(a)(2), and Dr. Gabardi has not offered any opinions on specific causation.

In their Opposition to Target's Motion for Summary Judgment, Plaintiffs suggest that they plan to prove specific causation through some combination of opinion testimony from (1) Plaintiff's treating physicians and (2) outside experts that Plaintiffs recently retained. [ECF No. 213-1]. But as this Court has already ruled, Plaintiffs' failure to disclose these experts' opinion testimony in accordance with Fed. R. Civ. P. 26(a)(2)—despite numerous opportunities to do so—precludes Plaintiffs from presenting these experts' opinions at trial.[3]

In this regard, Plaintiffs' Motion for Leave to Re-Open Discovery [ECF No. 213] is <u>DENIED</u>. The Court has provided Plaintiffs with ample opportunities to prepare their expert case. Further, although Plaintiffs assert that their counsel's health problems interfered with their ability to retain and disclose experts, their counsel was allegedly hospitalized only between late 2014 and early 2015. As previously explained, the Court granted Plaintiffs numerous extensions of time, the last of which gave them until December 21, 2015 to disclose their experts. Thus, counsel's hospitalization in 2014 and early 2015 does not establish good cause to re-open expert

---

[3] Attached to Plaintiffs' Opposition is a letter dated December 1, 2009 from Dr. Michael Curry, one of Plaintiff's treating physicians. [ECF No. 219-2]. Plaintiffs appear to have introduced this document as an exhibit during Mrs. Andrews' deposition on July 2, 2015. In the letter, Dr. Curry explains that he treated Mr. Andrews in September 2009, shortly after the Prograf overdose, and he explains some of the symptoms that Plaintiff allegedly experienced after taking the Prograf. Merely using the document as an exhibit during a deposition, however, does not satisfy Plaintiffs' expert disclosure obligations under Fed. R. Civ. P. 26(a)(2). Moreover, after that deposition took place, the Court expressly instructed Plaintiffs to disclose any expert opinion testimony they intended to present in accordance with Fed. R. Civ. P. 26 and gave Plaintiffs ample time in which to do so. [ECF No. 82]. The only expert opinion that Plaintiffs disclosed, however, was Dr. Gabardi's report. As the Court has previously ruled, [ECF Nos. 175, 210], Plaintiffs did not properly disclose any opinion testimony from Mr. Andrews' treating physicians in accordance with Fed. R. Civ. P. 26(a)(2)(C), and they are therefore barred from introducing any opinion testimony from these physicians at trial.

discovery on the eve of trial, particularly where there was no mention of counsel's health issues in any prior filing or during the numerous conferences held in connection with this matter.

In the absence of any expert opinion evidence on the element of specific causation, Plaintiffs cannot prove any of their negligence claims at trial. Thus, Target is necessarily entitled to judgment as a matter of law. See Milward, 820 F.3d at 476 (holding that district court properly granted summary judgment for defendant, in the absence of any "medical expert evidence in the record probative on specific causation").[4]

## IV.   CONCLUSION

For the reasons set forth in this Order, Target's Motion for Summary Judgment [ECF No. 211] is ALLOWED, and Plaintiffs' Motion to Re-Open Discovery [ECF No. 213] is DENIED. In light of this ruling, Defendants' pending Motions in Limine [ECF No. 221, 222, 223] are DENIED AS MOOT. The Clerk is directed to enter Judgment for the Defendant.

**SO ORDERED.**

Dated: August 10, 2016                                       /s/ Allison D. Burroughs
                                                             ALLISON D. BURROUGHS
                                                             U.S. DISTRICT JUDGE

---

[4] Although Plaintiffs also seek damages for Mr. Andrews' alleged loss of income, those damages stem from Mr. Andrews' alleged personal injuries. Thus, the lack of expert testimony on medical causation is equally fatal to Mr. Andrews' claim for lost wages. Furthermore, the undisputed facts establish that Mr. Andrews ceased working in 2007 or 2008, well before the Prograf overdose. As Plaintiffs have not responded with any evidence suggesting that Mr. Andrews' loss of income was proximately caused by the Prograf overdose, Target is entitled to judgment as a matter of law. Finally, because Plaintiffs cannot establish that Target's negligence proximately caused any of the alleged injuries that give rise to Mrs. Andrews' loss of consortium with her husband, Target is also entitled to summary judgment on Mrs. Andrews' consortium claim. See Sena v. Commonwealth, 417 Mass. 250, 264 (1994) ("As a general rule, a claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse personal injury.").